All right, our last case on this morning's oral argument document is number 5-24-0916, Richardson v. Fairview Heights Medical Group. Appellant, if you are ready, you may proceed. And before I begin, Your Honor, just to explain the relationship here, my name is Gretchen. Would you speak up, please? Yes, of course. My name is Gretchen Harris-Sperry. I'll be arguing on behalf of all of the defendants, including Alton Memorial Hospital, which filed a separate brief. And all the arguments today will be on behalf of all of the defendants, including Alton, and adopting all of the briefs for all the defendants as well. And Ms. Dimitrieva is here on behalf of Alton in case the Court has any questions of her. May it please the Court, Presiding Justice, Counsel, again, my name is Gretchen Sperry, and I represent the Fairview Heights Medical Group, Casey Ayers, and today representing all of the defendants in this case. Of course, the Court is aware that this is an appeal from the denial of a form of nonconvenience motion entered by Judge Gleason in the St. Clair County Circuit Court, in which the defendants moved to transfer this case back to Madison County, where this case had been litigated for four years before Ms. Richardson suddenly dismissed and refiled this lawsuit in St. Clair County. How old was Ms. Richardson when this case started? I beg your pardon? How old was Ms. Richardson when she had the surgery? I believe she had just graduated high school or sometime close to that, either the summer after she had graduated high school. She was only 18? Something like that. And she lived in Jersey County? Correct.  Did she live at home with her parents? She did. And while this is, the Court is accustomed to hearing form of nonconvenience cases that balance the factors and discuss the weighting that the trial court gave, this case is not a typical form of nonconvenience case. What if the discovery is already completed? The parties have completed discovery, all fact discovery. When the form of nonconvenience petition was allowed and the automatic state was put in place, the parties did agree to continue with some expert discovery, and I believe that some expert discovery has been, some expert depositions have been taken of plaintiff's experts. There was, I believe, a mediation that occurred recently, but still in the expert discovery phase. And so is that the only thing left to do? Correct, Your Honor. That's right. And at the time that this case was dismissed from Madison County, the parties were talking about deciding on common dates that would be suitable for trial. So one of the attorneys had called the attorney for the plaintiff and asked for a trial date. Is that correct? It was over email, but that's right. That's right. And the response was a flat no, and within a couple of weeks of that email, the case had been voluntarily dismissed and refiled. The errors in this case are several, and they are fundamental because they affect the court's application, misapplication of the legal framework that applies to form nonconvenience analysis. Because the court... Okay. One concept that comes up in the briefs is that the defendants are arguing that this is a second choice forum.  Is the fact that it is the plaintiff's choice something the courts should consider a deference to for the plaintiff? Absolutely, Your Honor. In the case of Peel v. Skelgis, the Illinois Supreme Court was clear that it was an abuse of discretion for the trial court not to consider the fact that the case that had been pending, in that case it was in Pike County, litigation had been ongoing for two years, and the case was on the brink of trial. And at that point, the plaintiff voluntarily dismissed and refiled the case in St. Clair County. And although the trial court denied the motion to transfer, the appellate court affirmed by the time it got to the Supreme Court. The Supreme Court said that it is essential that trial courts consider the fact not only that it's a second choice forum, but also the fact that there had been extensive litigation in that other forum before moving to... Well, my question is, is the plaintiff still entitled to deference? Well, the plaintiff's entitled to some deference. We're not arguing that it's entitled to no deference. But particularly here, considering that there are several independent factors that would diminish the plaintiff's deference to choice of forum, we think that the deference given here should be very minimal. Well, in those second choice forum cases, did the plaintiff reside in the first choice or the second choice? Well, in some cases, the plaintiff did reside in the county that he or she was seeking to transfer to. In some cases, he or she did not. For example, the cases, the close progeny of the Peel case would be the Czarnecki v. Unovan, Wagner v. Eagle Food Stores. And those cases carried the message through from the Supreme Court in Peel, saying that in Czarnecki, for example, the case had been litigated in Will County for four years. And it, too, was three weeks away from trial, at the point that the plaintiff dismissed and tried to refile the case in Cook County. And this plaintiff moved to Cook County? The plaintiff did not move to Cook County. So that would be different from this case? Correct. The principle that arises out of those cases is that it is critical for the courts to consider prior litigation and the fact that it was a second choice forum, not a first choice forum. Now, the case that applies most directly here, where the plaintiff was a resident of the forum, is the Corona case decided by this court. Let me ask you another fact. Hadn't she obtained a job in St. Cook County? She did. That's right. Tell me about that job. What kind of job was it? It's a waitress, I'm sorry, it's a waitressing job that she has. It's, she currently lives, as of June 2023, Ms. Richardson had moved to O'Fallon, which is in St. Clair County. Her job is in downtown Belleville, which is a 20-plus minute drive. And the argument that Ms. Richardson is making here is that because she works five minutes from the Belleville courthouse, that it is more convenient for her and it is more convenient to uproot this case, where it had been pending for four years in Madison County, and move everything over to Belleville for that purpose of her convenience. Whereas before she moved to O'Fallon, she was living in Jersey County with her parents and traveling a much farther distance to get to Madison County than she is currently to get to. Did she work in Madison County at the time the case was filed? She did not, that's my knowledge. Was she working at all? She had a job that also was in Jersey County, if I remember correctly. It was, I believe that's right, Carrollton? I think that's right. I'm sorry. And I can find that answer for you, Your Honor. The fact is that... You'll get a chance for rebuttal. Okay, thank you. I will do that. I'll look that up. The fact of the matter is that by, frankly, ignoring the fact that this case had been pending in Madison County for four years, had been litigated to near completion, and the fact that this was a second choice forum, meaning that all four years that this case had been going on in Madison County, it was going on at the plaintiff's election to proceed in that county. What cases like Dottie and others have said is that the plaintiff's convenience is but one factor in a forum nonconvenience analysis, and it cannot trump all of the other factors of convenience. The purpose of the forum nonconvenience doctrine is to examine the potential forum and decide which is most convenient for all of the parties involved, all the occurrence witnesses involved. And this is not simply a matter of following the plaintiff at her whimsy to uproot a case that's been pending in that court for as long as it has. Now, when this issue was raised with the trial court during the hearing, before defense counsel could barely get a word out, the trial court asked, I don't understand, and I'm paraphrasing here, but I'm not sure I understand, how is this a second choice forum? I have a 2023 case here, and it's filed by someone who currently lives in this jurisdiction. What's the second choice forum? And the fact is, as Mr. Winslow explained, it's a second choice forum because there is a long history of the parties having been litigating this case at the convenience of all, where Judge Thraub held in the Madison County Court what had ruled on nearly every motion in that case and amassed institutional knowledge. The Madison County Court had expended the resources to keep this case on its docket. All the parties agreed that this was the most convenient forum for everyone. And now, by taking the case out of that forum and removing it from that history, it really is a disservice to the court. It's an inefficient process, and frankly, it perverts the, misuses the voluntary dismissal process. It misuses the deference that's given to a plaintiff's choice of forum if he or she can just, by simple motion, up and move the case and everyone and everything with it. Fairview Heights Medical Group has hospitals or locations in St. Clair County, is that right? It does. And how important a factor is that in our analysis? In this case, it is not an open factor at all. Excuse me. The court abused its discretion, frankly, in its order when it found that St. Clair County had a connection with this lawsuit independent of Ms. Richardson's residence, newly established post-injury residence in St. Clair County. According to the court, St. Clair County had an interest because there was a corporate Fairview Heights document that suggested that any of the three non-corporate defendants, Dr. Hussain, Dr. Aldridge, and nurse practitioner Ayers, could be transferred to St. Clair County at any time. The second finding that the court made was that St. Clair County had physical facilities, I'm sorry, Fairview Heights Medical Group had physical facilities, was conducting business sufficient to hook the defendants in this case to St. Clair County. But those conclusions are wrong for two reasons. The first is the corporate document, going back to the corporate document that the court referred to, it's actually a standard employment agreement between nurse practitioners, and in this case it was for nurse practitioner Ayers. And while the boilerplate language said to the effect that the nurse practitioner could be transferred at any time, the fact is there's an affidavit from the vice president of operations overseeing FHMG, which said that there are no facilities in St. Clair County that provide general surgical services of the type that are involved in this case, that none of the defendants for FHMG have privileges to practice in St. Clair County, have never had privileges to practice in St. Clair County, and the fact that the FHMG facilities may be operating in St. Clair County, none of the business that goes on there is related to the issues in this case or the care that was given to Ms. Richardson in this case. And that is by affidavit. There is no support in the record for the court's conclusion that any of the three defendants, including two of those defendants who are not even themselves nurse practitioners, there's no support for the conclusion that that contract somehow hooks FHMG and the defendants to St. Clair County. The other conclusion that the court arrived at was, excuse me, it was agreed by the case law, which suggests Bruce V. Adedaro is one compelling case, which stands for the same proposition that if there is no activity being conducted in that county that is of the same type or could potentially be of the same type as involved in this injury, then it's irrelevant for purposes of the forum not convenience analysis. And it's important that the court recognize that, I'm sorry, I see that my time is up. Can I finish? Go ahead and take some break. I've taken quite a bit of time. Okay. May I finish? Yes. The point is that it's important for the court to recognize that those two conclusions are themselves unfounded. And outside of that, there is no other connection between St. Clair County and this lawsuit. And it's important because Ms. Richardson's post-injury move to St. Clair County is not, in and of itself, sufficient to hook St. Clair County as the appropriate forum in this case. Thank you. What if she had a subsequent move? What if she had a subsequent move? Could she voluntarily dismiss again and wait to re-file? I believe that the voluntary dismissal statute only allows for one dismissal and re-filing. But, you know, to your Honor's point, outside of that, I think perhaps to see where your Honor is going, is that at any time the plaintiff decided to exercise that right and upend or uproot the ongoing litigation, it would be very problematic. And that would be something this Court would not want to condone. Okay. Thank you. Yes. On the issue of this second choice, are any of those cases that you cite, the facts have the plaintiff's moving to that new forum? Yes, your Honor. And most relevant here is a case from this jurisdiction, the Corona case, which we cited in our brief. And in that case, the plaintiff was a resident of Mississippi. He was injured in a train accident in Louisiana and filed his lawsuit in Madison County in Illinois. And then... Was that an FVLA case? It was an FVLA case, yes. And then moved to Madison County. And the principle that arose out of that case, quite strongly worded principle from this Court, is that a post-injury move to a jurisdiction that otherwise had no connection with the lawsuit whatsoever is, frankly, not even a proper venue. But in any event, would be, if it were proper to consider it as a potential forum, would be entitled to virtually no deference because of the fact that there was no connection, even from the perspective of the community or the county itself, having a connection to adjudicating on behalf of one of its residents. There simply was... Because the injury arose after the move, that wasn't enough to secure that as a proper forum. The Illinois Supreme Court then adopted that reasoning and applied it in the McLean case, which we cite in our brief as well, and arrived at the same conclusion that post-injury moves to unrelated forum, forum that did not have any other relationship, are improper forums for hosting and were entitled to little to no deference. Thank you, counsel. Thank you. May it please the Court, good morning. Good morning. Yes, good morning. Your Honor, your question, Corona is an interstate forum non-convenience case. It's not an intrastate forum non-convenience case. The plaintiff moved to Illinois. The accident happened in Louisiana. He formerly resided in Mississippi. The issues are totally the opposite. In this case, we're talking about a lady who got a job in St. Clair County. She has a profound disability. She found a job where the employer would accommodate her. Prior to that, she, I mean, counsel indicated to your question, she worked in Madison County. She worked at Red Lobster. Because of her injury, she frequently has to use the restroom. She found a job in St. Clair County. She had to have a large portion of her small intestine removed. Virtually all of it, Judge. She has short gut syndrome. She's left with 18 inches of her small intestine, and this happened when she was 19 years old. So does that mean when she eats something, she has to immediately have that food available? That is correct, Your Honor. And that's one of the things that Clair B's would do for her. Clair B's is a small restaurant, and Red Lobster wouldn't do that. So she found a job at Clair B's, and she moved to St. Clair County. And then she non-suited her case, and she refiled it in St. Clair County. And the suggestions in the brief have been that this was somehow fraudulent or this was wrong or this was dishonest, and it wasn't. And I've got some comments to make about that in just a moment. But to your point also, Justice Shuler, is that, yes, there's an absolute right to non-suit your case. I want to be very clear about something. When they talk about four years of work going down the drain, it hasn't gone down the drain. There's been a stipulation that everything that was done in Madison County carries over in St. Clair County. And to your question, Justice Moore, is that, yes, discovery continues to be ongoing. We got a stipulation from the defendants, which I've had them for, that pending this appeal, that we're allowed to continue with discovery. Well, wasn't their motion reasserted in St. Clair County that you withdrew on account of the law of the case? Yes, I did. I stipulated that. So that means that the rulings are ongoing from that point? Absolutely. I stipulated that was the law of the case. That was one of the arguments that they suggested in their briefs. They suggested this non-suit was designed to avoid the law of the case. Now, I didn't refile that motion because there's other lawyers involved in this case who handled it before I got involved. But as soon as I realized that, the first thing I said, and it's a matter of record, is I stipulated, we are not taking the position that any rulings in Madison County are not the law of the case. They are the law of the case. Isn't there one jury instruction issue, though? That's still pending. But that was under advisement. Judge Schreckheld had that under advisement. And it's a 501 instruction, Justice Bikani, and that wouldn't have been relevant for him to determine until the pretrial conference in the event. So that's still pending. But beyond that, everything else. We've also stipulated during the pendency of this case that Judge Gleeson is not to rule on anything so that the law of the case remains exactly as it was until this Court has ruled. But I want to be clear with this notion of four years of work. It hasn't gone down the drain. Is that stipulation with all parties? Yes. Absolutely. So there's been an agreement on all that. To your question, Justice Moore, you asked a question about Fairview Heights Medical. And you asked a question about, well, what are their activities in St. Clair County? Because this was a big argument that they made, that Fairview Heights Medical really has nothing to do with St. Clair County. And they take this position, which is an interesting position, they take this position that because this is a surgery case that there's nothing that Fairview Heights Medical operates in St. Clair County. Judge, I'm going to ask you all to take judicial notice of the only Secretary of State. And I'm going to ask you of the Secretary of State, which provides Fairview Heights Medical Group SC. Medical Group, Fairview Heights Medical Group SC, operates 21 different active medical practices in St. Clair County, including surgery, and furthermore, several surgeries. Vascular surgery, which is another with all due respect. Jim Neville's sons work in vascular surgery. Plastic surgery, hand surgery. Furthermore, there's another issue in this case, and it has to do with the management of this child post-op in the ICU. They operate two different ICU practices. Was that surgery in Madison? I'm sorry, your Honor? Was that surgery in Madison County? The original surgery was in Madison County. And then she was transferred to Barnes? She was transferred to Barnes. Yes, sir. So the point I'm trying to make is that there's a lot of interest in St. Clair County in this case. And it's not just a passing interest, passing venue. And they've made a big point about the fact that this is a surgery case. It's a surgery case and an ICU case. But, again, I take judicial notice, but if you go to the online Secretary of State, you will find there are 21 practices operated by Fairview Heights Medical in St. Clair County, which is still an adjoining town. So I make that point to your question, Justice, more about Fairview Heights Medical. Well, how does that figure into our analysis that the distance between Madison and St. Clair? Because the defendants have argued extensively in their brief that St. Clair County has no interest in this case. They have argued in this case that Fairview Heights Medical's presence as a venue-producing defendant really has nothing to do with any of the issues in this case, and that isn't true. Fairview Heights Medical operates practices in Madison and St. Clair County, including surgery practices and ICU practices, which are precisely the issue in this case. So that is a response that they raised and created in their own brief, which I'm responding to and responding to your question on. This is a case, and there's never been a case like this that I'm aware of. Oh, the other question. You asked about the second choice of forms. Every case they cited, they cited Pelley. It's hard getting all these to remember all this stuff off the top of my head. But she responded with that case that was an FVLA case. That's right. That was an interstate. It's an interstate, and I thought they remembered. We're talking about hundreds of miles. These are adjoining counties. But I want to talk about Pelley, Zrznecki, and Wagner. Those are the three cases they cited. Every single one of those cases, and none of those cases when they were re-filed, the plaintiff did not reside in the new form, to answer your question. None of them. Every single one when they non-sued, they re-filed, and the plaintiff did not live. Did the court give deference despite that fact? They gave some deference, but not enough to get the plaintiff over the hump, because each one of those cases, the cases were transferred. So how much difference does it make that the plaintiff lives there now? I think it makes a huge difference, because the law of the jurisprudence has always been, and this is what I run into in these cases all the time. When I have form cases up before this court, oftentimes my client, the plaintiff, is not a resident of the form that I want the case to remain in. In this case, she is a resident, which makes it. So cases have always held that the plaintiff's choice of form is entitled to deference, but less deference whether you're not a resident of the county in which she seeks to keep her case. This is a case, the only case that I'm aware of, where there's been an attack on a trial court's order where the plaintiff resides in the county in which she seeks to keep her case, where there's an adjoining county, where there's substantial contacts to the county in which she seeks to keep her case, which is St. Clair County, and in an incident such as this where there's been an agreement or stipulation that all the discovery from the other county will move to this county. And see, there's been suggestions that there's form shopping, and there isn't form shopping. I mean, as a practical matter, to Mr. Winslow's point, when Mr. Winslow argued the case in front of the trial court, because you remember, they're attacking Judge Gleeson's order as not having, you know, not being grounded and being an abuse of discretion. Well, and they say repeatedly in their brief that the fact that she filed a case to avoid an adverse ruling. We didn't avoid the case to avoid an adverse ruling. We stipulated that ruling is the law of the case. They said, isn't it convenient that she non-suited her case, moved to St. Clair County, non-suited her case, and then refiled it. She moved to St. Clair County because she found a job that would accommodate her disability, and she lived there, and there's been no evidence that there's anything fraudulent at all about her moving there. And they talk about it. This is all evidence of form shopping. Judge, this is what Judge Gleeson had in front of him. He said Mr. Winslow said specifically, and to the extent that it has been asserted on behalf of my client or in my brief that this is evidence of form shopping, we can hear that and we withdraw that portion of our argument. That's what they had to say about the issue as it related to the motion for sanctions. Here's what he had to say about the issue of whether or not my client fortunately moved to St. Clair County when there's no evidence, no evidence of it whatsoever. And it said to the extent that it has been interpreted about our argument to accuse him of engaging in fraud or some kind as an officer of the court. To the extent this has been stated explicitly, I don't think it's been implied, but I agree that he is zealously representing his client given the change of circumstances and has taken legal measures to best position the court. Here's what he also said. We've submitted clearly state the court does not have to reach the question of whether plaintiff has engaged in form shopping to engage in this case. And that's what the police had done. And then we get their brief and all they talk about is form shopping. Now, that's, that isn't what was said and there isn't any form shopping because of the fact that we've stipulated the law of the case and we didn't, there's no evidence whatsoever that this young lady's move was anything other than grounded in a change of her circumstances and the question. Something else I want to tell you about. The other thing they make a big deal about their brief is they say all of the defendants, all of the defendants either live or work in Madison County. That is not true. It's not even close to true. And again, judicial notice. I would ask the court to take judicial notice of the Illinois State, Illinois Department of Professional Regulations. The Illinois Department of Professional Regulations has a licensed lawyer. I'm here to tell you something. Dr. Hussain hasn't been licensed to practice medicine in the state of Illinois since 2020. He lives in Columbia, Missouri. When they say that those defendants either work or live in St. Croix County, that's not true. Dr. LoBianco, look him up. He's never been licensed to practice in the state of Illinois. And yet they would tell this court in their brief that all of the defendants are either licensed or work or practice in the state of Illinois. It isn't true. It's just not true. I mean, in addition to that, they make a statement about, oh, they're talking about a case called Matter in the brief. Matter was a case where the defendant or the plaintiff had two residences, DuPage County, and then he had an apartment in Chicago. And he filed a divorce case in Cook County and then wanted to stay in Cook County. And the appellate court said no for noncommittance. But it's important to note in that case that the whole way of that case said that he resided in both counties. They didn't say he only resided in Cook County. They said he resided in Cook County and DuPage County. That's the matter. That's like the second-to-last paragraph in the case. The bottom line is here is that, as I said, Pelley's, there's McKee, Wagner, none of them applied. I'd also like to point out that when they make these issues with respect to food shopping, this is what they tell us from the trial court. We talked a lot about the second choice forum issue. But I would like to ask you, and I'll ask your opponent on rebuttal the same question, is I would like you to at least briefly address public and private interest factors. Yes, sir. The private interest factors in this case are as follows. Number one is that my client resides in St. Clair County. Number two, and it's a good point because this is another point that was made. As it relates to the private interest factors, one of the things the defendants talk about in the brief is they say, the ease of access of evidence of favors transferred back to Madison County. Oh, and they actually said, and I don't know how, a view of the site of the injury. Now, this is a malpractice case. There's no reason to view the site of the injury. What are they going to look at the operating room? I've never heard of such a thing. And furthermore, in addition to that, when they talk about weighing the access of proof, I'm going to bring your attention back to Mr. Winslow's comment. Mr. Winslow said to Judge Boese, remember, the guy who got to be found to have seriously abused his discretion based upon what he was told in open court. And I think we've got to go down this road by acknowledging that the access to documentary evidence is not significantly different. He also said, Judge, the access to evidence in this case and day and age, you know, we're not here to represent to the court that we need real-time access to documentary evidence and paper. These cases are litigated on electronic records. Plaintiff's choice of brook. She lives in St. Clair County. It's entitled to substantial deference. These are adjoining counties, Your Honor. The distance between these two courthouses is 25 minutes. Furthermore, as it relates to private interest factors, as I pointed out, these doctors don't live or work in Madison County. Contrary to representations they made, look it up on the online license lookup. Dr. Gustain, the one that lives in Columbia, Missouri, the one that did the surgery. Yes, sir. And Dr. Lobianco was in charge of the ICU recovery. Interest, public and private interest factors, is that as it relates to St. Clair County, there are 21 different medical groups that practice in St. Clair County. There's like 20 that practice in Madison County. And to their point, both surgery and ICU have medical groups that practice in St. Clair County. And this original surgery was gallbladder surgery? Yes, Your Honor. Was it laparoscopic? Yes, sir. And then what they did is they severed the belly. They already done it. And then they tried to do a T to repair laparoscopically. And obviously, it's a bit dire. As it relates to the public interest, surely there's a public interest. I mean, St. Clair County has a strong interest, number one, in protecting its own resident, and number two, protecting as it relates to St. Clair, Thurber Heights Medical. I mean, there's 21 medical groups that they have an interest in regulating. So there's no burden on the jurors of St. Clair County in hearing a case that involves one of their own residents. And furthermore, there's no burden when it comes to the notion of their interest in protecting Thurber Heights Medical Group. Anything else? Well, I conclude by the words of Jack Bond. Thanks for your time this time. Until next time, so long. Your Honors, a few points on cuddle here. First, Justice Moore, to answer your question. Ms. Richardson worked at the Gillade Shelter Care in Carrollton after her injury. Now, interestingly, when Ms. Richardson – Would you please speak up? I'm sorry. Nobody usually ever asks me. Ms. Richardson worked in Carrollton at a shelter after her injury, and she had that job at the time that she was deposed in this case. And interestingly, what she said in her testimony is that she drove about 30 minutes to get to her job at that time. And this was shortly after the injury. Was that when she was still living in Jersey County? Jersey County, that's right. It's still quite a distance for her to drive. She testified that she was fine with making that trip. She had learned how to adjust her diet and her schedule in order to make that trip manageable for her and in other ways had been working through how to deal with her situation. How old is she now? I beg your pardon? How old is she now? I'm going – She was 18 in surgery. Which is 2018. But you said it was – Yeah, that's not my – 26 or so, 25, 26. But the reality is that even at that time, shortly after her injury, she was doing the same distance that she now claims is grossly unbearable for her to do. A couple of other points I want to address. Mr. Keith suggested that this case involves ICU centers and there are FHMG, Fairview Heights ICU centers. FHMG does not operate any ICU centers. All the ICU care here was done at Alta Memorial. I also want to clarify that much of what my colleague was talking about here during his time is not in the record. And there are other examples of that throughout, and I think we pointed this out in our brief as well. For example, these citations to the Secretary of State website or to the IDFPR website. Well, he's asking us to take judicial notice of these things. But that may – What's your response to that? That may be. Working with the record that we have here, however, Nancy Trevere, who is the Vice President of Operations of BJC, which oversees or is the umbrella organization for FHMG, provided testimonial evidence in the form of an affidavit that said that FHMG does not provide the types of services that the practitioners, Dr. Hussain, Dr. LoBianco, nurse practitioner, none of them have or ever had privileges to practice in St. Clair County. None of them – none of the facilities, FHMG facilities in St. Clair County, perform the type of services that are at issue here, in this case, general surgical services. And that's the Brandt case that said that is – any business that's being done by the same company that isn't related to the services at issue here is irrelevant for purposes of the form nonconvenience analysis. Quickly, I also want to note that Mr. Kief made representations in the court below as well as to what he believed FHMG does, what services it provides. And he cited as source material for that his own allegations in his complaint. Again, with Ms. Trevere's testimonial evidence in the form of an affidavit, neither those allegations of the complaint nor these new documents, which I – you know, for what period of time, I don't know, those are not sufficient forms of proof that can rebut the testimonial evidence in this case. The fact of the matter is, first and foremost, Judge Gleeson was aware of, was made well aware by Mr. Winslow of the arguments relating to second-choice form and the requirement – I'm sorry, I see my time is up. Can I conclude? Was made well aware of the centerpiece arguments of defendants' claims about second-choice form, given less deference, about having to consider the extensive history of litigation and other forms. Judge Gleeson asked for authority of citations to cases, which Mr. Winslow provided. They were in the briefs. They were briefed by the parties. Nothing in the order even addresses these arguments. The court simply chose not to apply the proper legal framework here, didn't explain it in the order, did not further engage with any of those arguments during the hearing, and that's an abuse of discretion. In addition to the other factual, unfounded factual findings the court made. Any further questions? No other questions. That's a show. No questions. All right, thank you very much. Thank you for your time. We will take this matter under advisement, issue a ruling in due court.